Nos. 2021-2251, 2021-2291

# United States Court of Appeals for the Federal Circuit

---

REALTIME DATA LLC, dba IXO,

*Plaintiff-Appellant,*

v.

ARRAY NETWORKS INC., NIMBUS DATA, INC.,

*Defendants.*

FORTINET, INC., REDUXIO SYSTEMS, INC., QUEST SOFTWARE, INC.,
CTERA NETWORKS, LTD., ARYAKA NETWORKS, INC.,
OPEN TEXT, INC., MONGODB INC., EGNYTE, INC., PANZURA, INC.,

*Defendants-Appellees.*

---

Appeal from the United States District Court for the District of Delaware
in Case No. 1:17-cv-00800-CFC, Judge Colm F. Connolly

---

REALTIME DATA LLC, dba IXO,

*Plaintiff-Appellant,*

v.

SPECTRA LOGIC CORPORATION,

*Defendant-Appellee.*

---

Appeal from the United States District Court for the District of Delaware
in Case No. 1:17-cv-00925-CFC, Judge Colm F. Connolly

---

## *AMICUS CURIAE* BRIEF OF VERITAS TECHNOLOGIES LLC IN SUPPORT OF APPELLEES AND AFFIRMANCE

---

Amit Makker
LATHAM & WATKINS LLP
505 Montgomery Street
Suite 2000
San Francisco, CA 94111
(415) 391-0600
amit.makker@lw.com

Gabriel K. Bell
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
(202) 637-2200
gabriel.bell@lw.com

March 18, 2022

*Counsel for* Amicus Curiae *Veritas Technologies LLC*

**CERTIFICATE OF INTEREST**

| | |
|---|---|
| **Case Number** | 2021-2251, 2021-2291 |
| **Short Case Caption** | *Realtime Data LLC v. Array Networks; Realtime Data LLC, v Spectra Logic Corporation* |
| **Filing Party/Entity** | Veritas Technologies LLC, *Amicus Curiae* |

I certify the following information is accurate and complete to the best of my knowledge.

Date:  March 18, 2022     Signature:     */s/ Gabriel K. Bell*

Name:      *Gabriel K. Bell*

1.    **Represented Entities**.  Provide the full names of all entities represented by undersigned counsel in this case.

Veritas Technologies LLC.

2.    **Real Party in Interest.**  Provide the full names of all real parties in interest for the entities.  Do not list the real parties if they are the same as the entities.

None.

3.    **Parent Corporations and Stockholders.**  Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

Veritas Technologies LLC is wholly owned by Veritas US Inc., which is owned by Veritas US Holdings, Inc. and Veritas Bermuda Ltd.  Veritas US Holdings, Inc. is wholly owned by Veritas Bermuda Ltd., which is wholly owned by Veritas Bermuda Intermediate Holdings Ltd., which is wholly owned by Veritas Holdings Ltd.  The Carlyle Group, Inc. and NortonLifeLock, Inc. are publicly held companies, each one of which indirectly owns 1% or more of the membership interests of Veritas Technologies LLC.

4.   **Legal Representatives.**   List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.   Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

None.

5.   **Related Cases.**   Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal.   Do not include the originating case number(s) for this case.  Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

*Realtime Data, LLC v. Veritas Technologies LLC*, N.D. Cal., Case No. 3:18-cv-06029-SI

*Realtime Data, LLC v. Acronis, Inc.*, D. Mass. Case No. 1:17-cv-011279-IT

*Realtime Data, LLC v. Carbonite, Inc.*, D. Mass. Case No. 1:17-cv-12499-IT

*Realtime Data, LLC v. Fujitsu America, Inc.*, N.D. Cal., Case No. 3:17-cv-02109-SK

6.   **Organizational Victims and Bankruptcy Cases.**   Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

None.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ................................................................. i

TABLE OF AUTHORITIES ................................................................ iv

INTEREST OF *AMICUS CURIAE* ........................................................ 1

INTRODUCTION ............................................................................. 2

ARGUMENT ................................................................................. 2

I.  REALTIME'S BROAD INFRINGEMENT ALLEGATIONS CUT ACROSS NUMEROUS INDUSTRIES, PRODUCTS, AND SERVICES ............................................................................. 2

II.  THE BREADTH OF REALTIME'S INFRINGEMENT ALLEGATIONS CONFIRM THAT ITS CLAIMS ARE INELIGIBLE ........................................................................... 3

    A.  The Claims' Breadth, Especially As Asserted By Realtime, Confirms They Are Directed To Abstract Ideas At Step One .............. 4

        1.  The '908 Patent Claims Are Directed To An Abstract Idea ............................................................................. 6

        2.  The '530 Patent Claims Are Directed To An Abstract Idea ............................................................................. 9

        3.  The '728 Patent Claims Are Directed To An Abstract Idea ............................................................................. 12

    B.  The Claims Contain No Inventive Concept To Meaningfully Limit Their Breadth ........................................................................... 17

CONCLUSION ............................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Adaptive Streaming Inc. v. Netflix, Inc.*,
836 F. App'x 900 (Fed. Cir. 2020) ................................................8, 18

*Affinity Labs of Texas, LLC v. DIRECTV, LLC*,
838 F.3d 1253 (Fed. Cir. 2016) ...........................................................19

*Alice Corp. Pty. Ltd. v. CLS Bank International*,
573 U.S. 208 (2014).................................................................*passim*

*BSG Tech LLC v. Buyseasons, Inc.*,
899 F.3d 1281 (Fed. Cir. 2018) ....................................4, 11, 15, 17, 19

*ChargePoint, Inc. v. SemaConnect, Inc.*,
920 F.3d 759 (Fed. Cir. 2019) ................................................................5

*Ericsson Inc. v. TCL Communication Techonolgy Holdings Ltd.*,
955 F.3d 1317 (Fed. Cir. 2020), *cert. denied*, 141 S. Ct. 2624
(2021)........................................................................................8, 11, 12

*FairWarning IP, LLC v. Iatric Systems, Inc.*,
839 F.3d 1089 (Fed. Cir. 2016) ..............................................................4

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
792 F.3d 1363 (Fed. Cir. 2015) .......................................................5, 17

*Intellectual Ventures I LLC v. Symantec Corp.*,
838 F.3d 1307 (Fed. Cir. 2016) ..............................................4, 11, 14

*McRO, Inc. v. Bandai Namco Games America Inc.*,
837 F.3d 1299 (Fed. Cir. 2016) ..............................................................9

*Parker v. Flook*,
437 U.S. 584 (1978)..................................................................................4

*PersonalWeb Technologies LLC v. Google LLC*,
8 F.4th 1310 (Fed. Cir. 2021) .......................................................11, 15

**Page(s)**

*Realtime Data LLC v. Reduxio Systems, Inc.*,
 831 F. App'x 492 (Fed. Cir. 2020) ................................................5, 14

*RecogniCorp, LLC v. Nintendo Co.*,
 855 F.3d 1322 (Fed. Cir. 2017) ............................................................5

*SAP America, Inc. v. InvestPic, LLC*,
 898 F.3d 1161 (Fed. Cir. 2018) ..........................................................15

*TecSec, Inc. v. Adobe Inc.*,
 978 F.3d 1278 (Fed. Cir. 2020) .......................................................4, 5

*In re TLI Communications LLC Patent Litigation*,
 823 F.3d 607 (Fed. Cir. 2016) ............................................................18

*Ultramercial, Inc. v. Hulu, LLC*,
 772 F.3d 709 (Fed. Cir. 2014) ............................................................19

*Universal Secure Registry LLC v. Apple Inc.*,
 10 F.4th 1342 (Fed. Cir. 2021) ....................................................15, 16

*Voit Technologies, LLC v. Del-Ton, Inc.*,
 757 F. App'x 1000 (Fed. Cir. 2019) ..............................................8, 18

*Yu v. Apple Inc.*,
 1 F.4th 1040 (Fed. Cir. 2021), *cert. denied*, No. 21-811, 2022 WL
 515904 (Feb. 22, 2022).................................................................5, 9

## STATUTES

35 U.S.C. § 101 ......................................................................................1

## INTEREST OF *AMICUS CURIAE*

Amicus curiae Veritas Technologies LLC ("Veritas") is a defendant in *Realtime Data, LLC v. Veritas Technologies, LLC*, No. 3:18-cv-06029-SI (N.D. Cal.). In that case, Plaintiff-Appellant Realtime Data LLC ("Realtime") asserts that Veritas infringes three of the patents at issue in these appeals—U.S. Patent Nos. 7,415,530 ("the '530 patent"), 9,054,728 ("the '728 patent"), and 9,116,908 ("the '908 patent"). The district court stayed that case and declined to resolve eligibility under 35 U.S.C. § 101 until the present appeals are resolved. Order Staying Case, *Realtime Data, LLC v. Veritas Techs., LLC*, No. 3:18-cv-06029-SI (N.D. Cal. Jan. 14, 2019), ECF No. 176. Veritas thus has an interest in the proper resolution of the § 101 issues here.

Veritas files this brief pursuant to Federal Rule of Appellate Procedure 29(a)(2), as all parties consented to its filing. *See* Fed. R. App. P. 29(a)(2); Fed. Cir. R. 29, Practice Note. Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), Veritas states: (i) no party's counsel authored this brief in whole or in part; (ii) no party or party's counsel contributed money that was intended to fund preparing or submitting the brief; and (iii) no person—other than the amicus curiae, its members, or its counsel—contributed money that was intended to fund preparing or submitting the brief. *See* Fed. R. App. P. 29(a)(4)(E).

**INTRODUCTION**

For more than a decade, Plaintiff-Appellant Realtime Data LLC has broadly and indiscriminately asserted the patents on appeal across numerous industries, products, and services in an effort to monopolize the use of data compression in today's technology industries.  Patent claims with such sweeping scope threaten to improperly tie up basic principles and inhibit, rather than promote, innovation— precisely the sort that are forbidden under § 101 and *Alice Corp. Pty. Ltd. v. CLS Bank International*, 573 U.S. 208 (2014).  At *Alice* step one, that asserted breadth confirms they are directed to abstract ideas, not any specific technological advance.  And at *Alice* step two, the claims fail to add any inventive concept apart from the abstract ideas themselves.  The claims recite only routine, conventional, and generic computer components used to carry out their respective abstract ideas—again, as confirmed by Realtime's wholesale assertion against entire industries.  Accordingly, Realtime's asserted patent claims are ineligible under § 101, as the district court correctly held.  Appx1-86.  The district court's orders should be affirmed.

**ARGUMENT**

## I.    REALTIME'S BROAD INFRINGEMENT ALLEGATIONS CUT ACROSS NUMEROUS INDUSTRIES, PRODUCTS, AND SERVICES

Since 2010, Realtime has accused more than ninety different companies of infringing one or more of the patents on appeal.  These companies have provided numerous products and services in a wide range of industries, including: cellular

network providers (e.g., T-Mobile), consumer electronics (e.g., Apple), database software (e.g., Oracle), data backup and protection software (e.g., Veritas), data storage hardware (e.g., Fujitsu), cloud-based data storage (e.g., Dropbox), managed network services and network optimization (e.g., Silver Peak Systems), satellite communications (e.g., EchoStar), and social networking (e.g., Facebook). To name a few. Realtime's infringement allegations broadly and indiscriminately cut across all of these different industries and different products and services. The import is clear: in Realtime's view, if you are using different forms of basic data compression or data reduction—no matter what particular techniques are used, how your system is implemented, or what your system is for—you are infringing Realtime's patents.

As Realtime's far-ranging allegations underscore, Realtime wields these patents with incredible breadth, seeking to monopolize the use of compression in seemingly any product in any industry.

## II. THE BREADTH OF REALTIME'S INFRINGEMENT ALLEGATIONS CONFIRM THAT ITS CLAIMS ARE INELIGIBLE

Abstract ideas are not patent-eligible under § 101 because they are "the basic tools of scientific and technological work" and allowing patentees to own them would "impede innovation more than it would tend to promote it, thereby thwarting the primary object of the patent laws." *Alice*, 573 U.S. at 216 (citations omitted). The Supreme Court has "repeatedly emphasized this concern that patent law not inhibit further discovery by improperly tying up the future use of these building

blocks of human ingenuity." *Id.* (cleaned up). Unduly preempting such building blocks is the "concern that undergirds [] § 101 jurisprudence." *Id.* at 223; *see id*. at 216 ("[T]he concern that drives this exclusionary principle [is] one of pre-emption.").

To be sure, claims need not *completely* preempt an abstract idea or an entire field to fail under § 101—that is not the test. *See, e.g.*, *Parker v. Flook*, 437 U.S. 584, 589-90 (1978); *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1291 (Fed. Cir. 2018) ("While preemption concerns are the basis for the judicial exceptions to patentability …, the absence of complete preemption does not demonstrate patent eligibility." (citation omitted)); *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1098 (Fed. Cir. 2016) (same); *Intell. Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1321 (Fed. Cir. 2016) ("*Symantec*") (same). But a broad preemptive scope certainly "may signal patent ineligible subject matter." *FairWarning*, 839 F.3d at 1098; *Symantec*, 838 F.3d at 1321. Here, Realtime's attempts to wield its claims with staggering breadth confirm that they are directed to abstract ideas, not any specific technological advance warranting patent protection.

## A.     The Claims' Breadth, Especially As Asserted By Realtime, Confirms They Are Directed To Abstract Ideas At Step One

At *Alice* step one, this Court determines whether the claims are directed to an abstract idea "by asking what the patent asserts to be the focus of the claimed advance over the prior art." *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1292 (Fed.

Cir. 2020) (cleaned up). This inquiry must account for, and not overgeneralize, "the language of the … [c]laims themselves, considered in light of the specification." *Id.* (citations omitted); *see also Realtime Data LLC v. Reduxio Sys., Inc.*, 831 F. App'x 492, 496 (Fed. Cir. 2020); *id*. at 500 (Taranto, J., concurring in the judgment).

In determining whether the claims focus on an abstract idea, "it is often useful to determine the breadth of the claims." *Intell. Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1369 (Fed. Cir. 2015) ("*Capital One*"). As this Court explained, "the breadth of [a] claim … underscores that the focus of the claimed advance is [an] abstract idea," not any specific technological improvement. *Yu v. Apple Inc.*, 1 F.4th 1040, 1045 (Fed. Cir. 2021), *cert. denied*, No. 21-811, 2022 WL 515904 (Feb. 22, 2022). Similarly, claims that merely recite "generalized steps to be performed on a computer using conventional computer activity" are abstract at step one. *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1326 (Fed. Cir. 2017) (citation omitted). That is so because the underlying "'concern that drives' the judicial exceptions to patentability is 'one of preemption'"—and unduly broad or generic claims necessarily tie up basic tools, contrary to Supreme Court jurisprudence. *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 766 (Fed. Cir. 2019) (quoting *Alice*, 573 U.S. at 216).

Here, the breadth of Realtime's patent claims—underscored by Realtime's strategy of asserting them against a sweeping array of products and services—

confirms they focus on abstract ideas untethered to any specific technological improvement. That is true, for example, as to the three patents that Realtime asserts against Veritas in co-pending litigation: the '908 and '530 patents (which share a specification) and the '728 patent. *See Realtime Data, LLC v. Veritas Technologies LLC*, No. 3:18-cv-06029-SI (N.D. Cal.) (stayed pending this appeal).

### 1.    The '908 Patent Claims Are Directed To An Abstract Idea

The '908 patent claims are phrased in highly generalized, result-oriented terms. Claim 1 of the '908 patent recites:

> 1. A system comprising:
>
> a memory device; and
>
> a data accelerator configured to compress: (i) a first data block with a first compression technique to provide a first compressed data block; and (ii) a second data block with a second compression technique, different from the first compression technique, to provide a second compressed data block;
>
> wherein the compressed first and second data blocks are stored on the memory device, and the compression and storage occurs faster than the first and second data blocks are able to be stored on the memory device in uncompressed form.

Appx183.

This claim recites only: a "memory device" with no details whatsoever[1] and a "data accelerator" that performs two functions: (1) compress two data blocks using any two conventional "compression techniques" and (2) stores the data blocks on the memory device so that the process of compressing and storing is "faster than" if the blocks were not compressed. *Which* compression methods are used? *How* does it achieve that acceleration goal? The claim does not say. In other words, the claim amounts to an instruction to pick any two data compression techniques and use them with an unspecified "data accelerator" to speed up the data compression and storage. That is purely aspirational—an abstract idea—not some technological advance. *See* Appx33-34 (claim combines the abstract idea of "compressing two different data blocks with different methods" with the abstract notion "that compression and storage together are faster than storage of the uncompressed data alone").

It is plain (and undisputed) that storing less data (i.e., compressed data) takes less time than storing more data (i.e., uncompressed data), all else equal. Thus, satisfying the claimed result hinges on how the compression itself occurs. But as the specification admits, fast compression is possible *not* because of something the inventor did or effected by the purported invention's combination of steps, but simply "due to recent improvements in processing speed." Appx176 (3:46-47).

---

[1]    *See* Appx177 (5:39-40) ("[T]he data storage device may be *any* form of memory device …." (emphasis added)); *see* Appx177 (5:48-49).

Indeed, the specification also admits that the claims can use "any" of the numerous "conventional," "well known," or "widely used" compression techniques.  Appx176 (4:48-54), Appx182 (16:49-53), Appx180 (11:31-45, 11:66-12:5), Appx175 (1:51-53), Appx181 (13:45-57).  The patent could scarcely be more clear in admitting that the purported invention merely *uses*, and does not purport to *improve*, conventional compression techniques.  That is a hallmark of claims directed to an abstract idea at step one.  Indeed, this Court has held (at the 12(b)(6) stage) that claims using conventional compression techniques are ineligible, including claims for using "second compression formats" suitable for different devices, *Adaptive Streaming Inc. v. Netflix, Inc.*, 836 F. App'x 900, 902 (Fed. Cir. 2020), and claims for "using different compression formats in the claimed network," *Voit Techs., LLC v. Del-Ton, Inc.*, 757 F. App'x 1000, 1003 (Fed. Cir. 2019).

Reciting a functional label ("data accelerator") for a purely functional component does not make the claim less abstract.  *See, e.g.*, *Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1326 (Fed. Cir. 2020) (abstract idea for controlling access to resources was "at the core of claim 1" despite reciting a functional "security access manager" and "technical jargon"), *cert. denied*, 141 S. Ct. 2624 (2021).  Indeed, Realtime's proposed construction of "data accelerator" as any "hardware or software with one or more compression encoders" confirms that Realtime broadly views the claims as encompassing use of any two types of

compression that happen to result in a speedier storage process. Realtime Br. 72. Likewise, the specification admits that the data accelerator requires no particular computer implementation or compression techniques. Appx176 (4:48-54), Appx182 (16:49-53), Appx180 (11:31-45, 11:66-12:5), Appx175 (1:51-53), Appx181 (13:45-57).

This lack of tie to any particular technological improvement "and the breadth of claim 1 underscores that the focus of the claimed advance is the abstract idea." *Yu*, 1 F.4th at 1045. This is precisely when the concerns underlying § 101 jurisprudence are most pronounced. *See, e.g.*, *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016) ("The preemption concern arises when the claims are not directed to a specific invention and instead improperly monopolize 'the basic tools of scientific and technological work.'" (quoting *Alice*, 573 U.S. at 216)).

### 2.    The '530 Patent Claims Are Directed To An Abstract Idea

Similarly, claim 1 of the '530 patent recites:

1. A system comprising:

a memory device; and

a data accelerator, wherein said data accelerator is coupled to said memory device, a data stream is received by said data accelerator in received form, said data stream includes a first data block and a second data block, said data stream is compressed by said data accelerator to provide a compressed data stream by compressing said

first data block with a first compression technique and said second data block with a second compression technique, said first and second compression techniques are different, said compressed data stream is stored on said memory device, said compression and storage occurs faster than said data stream is able to be stored on said memory device in said received form, a first data descriptor is stored on said memory device indicative of said first compression technique, and said first descriptor is utilized to decompress the portion of said compressed data stream associated with said first data block.

Appx119.

This claim is essentially the same as claim 1 of the '908 patent—it, again, recites a generic "memory device" and a "data accelerator" that (1) compresses two data blocks using any two different (unspecified) compression techniques and (2) stores the data blocks such that (in some unspecified way) the process is faster than storing uncompressed data. The only difference is that this claim states that the system uses a "data descriptor" to indicate which compression technique was used on one of the blocks. But the "data descriptor" does nothing more than identify the compression technique; the claim says nothing about how it is implemented or how it improves the technology. *See id*. ("first data descriptor is … indicative of said first compression technique, and … is utilized to decompress"). The specification admits, for example, that it is simply "*any* recognizable data token or descriptor." Appx180 (12:64-67) (emphasis added). The district court correctly recognized that this does not change the claim's focus on the same abstract idea. Appx34-35.

This Court's decision in *Ericsson* is instructive. There, the claims recited a "[m]iddleware" software system for controlling access to a user's hardware platform (such as a mobile phone), and included an "access controller," an "interception module," and a "decision entity." 955 F.3d at 1325-26. Despite their "technical jargon, a close analysis of the claims reveal[ed] that they require[d] nothing more than [an] abstract idea"—"controlling access to, or limiting permission to, resources." *Id.* at 1326. Notably, one claim added that the access decision was made "based on an identification stored in the record," but this Court held that it was "directed to the same abstract idea." *Id.* at 1326-27. Similarly, in *PersonalWeb Technologies LLC v. Google LLC*, 8 F.4th 1310, 1315 (Fed. Cir. 2021), this Court held that claims reciting "an algorithm-generated content-based identifier to perform the claimed data-management functions" were still abstract and ineligible on the pleadings. Likewise, here, adding that the data management functions (compression and decompression) are done using an identifier (data descriptor) does not make the claims less abstract. *See also, e.g.*, *Symantec*, 838 F.3d at 1313 (claims for identifying digital data based on "file content identifiers" were abstract); *BSG Tech*, 899 F.3d at 1287 n.1 (claims focus on same abstract idea despite incidental differences, such as "add[ing] certain types of information to the database").

11

### 3.    The '728 Patent Claims Are Directed To An Abstract Idea

The '728 patent claims similarly focus on an abstract idea.  Claim 1 recites:

> 1. A system for compressing data comprising;
>
> a processor;
>
> one or more content dependent data compression
>     encoders; and
>
> a single data compression encoder;
>
> wherein the processor is configured:
>
> to analyze data within a data block to identify one or more
>     parameters or attributes of the data wherein the
>     analyzing of the data within the data block to identify
>     the one or more parameters or attributes of the data
>     excludes analyzing based solely on a descriptor that is
>     indicative of the one or more parameters or attributes
>     of the data within the data block;
>
> to perform content dependent data compression with the
>     one or more content dependent data compression
>     encoders if the one or more parameters or attributes of
>     the data are identified; and
>
> to perform data compression with the single data
>     compression encoder, if the one or more parameters or
>     attributes of the data are not identified.

Appx345.

Here again, "a close analysis of the claim[]" (*Ericsson*, 955 F.3d at 1326)

shows that it centers on an abstract idea for "compressing data based on the content

of that data," as the district court found.  Appx30.  The claim initially recites generic

and admittedly conventional components: an unspecified "processor"[2] and "data compression encoders" (at least one of which is a "content dependent data compression encoder[]"). Those are not a purported advance over the prior art. The specification admits that content dependent data compression (i.e., selecting a compression method based on the data's content) is conventional: "there are *many conventional* content dependent techniques" and it was well-known that the effectiveness of data compression is "highly contingent upon the content of the data being compressed." Appx333-334 (2:33-35, 2:65-3:52) (emphasis added). Indeed, it can use any "currently well known" or "future" techniques. Appx336 (7:14-15, 8:39-40).

This confirms that the "focus" of the claim is on in the subsequent steps for analyzing the data's attributes and then selecting a compression method based on those attributes. *See* Appx345 (cl. 1) ("analyze" the data "to identify one or more parameters or attributes" and, based on that analysis, "perform" compression using either a "content dependent data compression encoder[]" or another "data compression encoder"). But this Court has held that precisely such data analysis is abstract. For example, in *Symantec*, the claims of one patent recited analyzing the

---

[2]    *See* Appx335 (6:31-37) (purported invention "may be implemented" using any "hardware, software, firmware, or a combination thereof" using "general purpose computer or any machine or device" with a processor).

"attributes" of digital data (messages), applying rules, and processing the data accordingly (e.g., by forwarding or quarantining it) are abstract. 838 F.3d at 1316-18. That the patent purported to improve computer systems using that analysis did not make it any less abstract. *See id*. The same conclusion follows here: analyzing the data's attributes and taking actions accordingly is abstract.

Tellingly, the claim provides no specific way to perform the data analysis—virtually all ways of analyzing data to identify any "parameters or attributes" are claimed. The *only* guidance it provides is that the analysis to determine the type of data cannot be "based solely on a descriptor." For example, files typically have an extension that indicates the type of data in file, such as ".jpg" for digital photos. *See* Appx334 (3:2-6) ("file type descriptors are typically appended to file names to describe the application programs that normally act upon the data contained within the file"); *Realtime*, 831 F. App'x at 499-500 (concurrence). Accordingly, the claim simply says: "don't rely solely on a file extension to determine the data's attributes; use some other way." But *what* other way? The claim does not say. *Any* other method of analyzing the data's attributes is fair game. And any inventive work on that critical step is left entirely to others. Such generalized attempts to preempt a broad swath of current and future technology is what § 101 and *Alice* prohibit. Put differently, merely excluding one type of data analysis while encompassing all other ways of data analysis is, at most, a "minimal narrowing" that still leaves the claims

14

abstract. *BSG Tech*, 899 F.3d at 1287; *see also SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1169 (Fed. Cir. 2018) ("further narrowing of what are still mathematical operations" is still abstract).

This Court's recent decisions confirm this conclusion. For example, in *PersonalWeb Technologies*, the claims recited a computer method for "using content-based identifiers to control access to data" by "(1) receiving a request containing a content-based identifier for a data item, (2) comparing the content-based identifier to a plurality of values, and (3) granting or disallowing access to the data item based on the comparison." 8 F.4th at 1313. And the "content-based identifiers" were "generated by a mathematical algorithm, such as a cryptographic hash or 'message digest' function." *Id.* at 1312-13 This Court held that the claims were directed to abstract ideas—"use of an algorithm-generated content-based identifier to perform the claimed data-management functions, … includ[ing] controlling access to data items"—and ineligible on the pleadings. *Id.* at 1316. Just as it was abstract to use one type of data analysis (i.e., generating content identifiers) to control data management functions in that case, it is equally (if not more) abstract to use any type of data analysis *except* content identifiers (i.e., descriptors) here.

In *Universal Secure Registry LLC v. Apple Inc.*, the claims were "directed to an electronic ID device that includes a biometric sensor, user interface, communication interface, and processor working together to (1) authenticate the user

based on two factors—biometric information and secret information known to the user—and (2) generate encrypted authentication information to send to the secure registry." 10 F.4th 1342, 1352 (Fed. Cir. 2021). Despite these seemingly-specific requirements, this Court held that claims were directed to an abstract idea for "collecting and examining data to enable authentication" without "improving any underlying technology." *Id.* (cleaned up) (affirming 12(b)(6) dismissal). There was "no description … of a specific technical solution by which the biometric information or the secret information is generated, or by which the authentication information is generated and transmitted." *Id.* Likewise, here, the even more generic use of *any* data-analysis technique (as long as it does not rely solely on a descriptor) cannot save the claims at step one.

The breadth of the '728 patent claims, as asserted by Realtime, reaches nearly any form of data analysis that allows a system to select a content dependent compression technique. Like with the '908 and '530 patents, the '728 patent claims are not tied to any specific technological improvement disclosed in the patent, confirming that they seek to unduly monopolize an abstract concept.

Realtime's claims are directed to abstract ideas at step one.

## B.     The Claims Contain No Inventive Concept To Meaningfully Limit Their Breadth

At *Alice* step two, courts must determine whether, apart from the abstract idea, the other elements add something significant (inventive) to "'transform' the claimed abstract idea into a patent-eligible application." *Alice*, 573 U.S. at 217-22 (citation omitted).  Merely implementing an abstract idea with generic computer components or functions in a particular technological environment is not enough—that still risks unduly tying up basic tools of science and technology.  *Id.* at 223-24; *see also, e.g.*, *Capital One*, 792 F.3d at 1368 ("Instructing one to 'apply' an abstract idea and reciting no more than generic computer elements performing generic computer tasks does not make an abstract idea patent-eligible.").

Realtime's claims add nothing significant beyond their abstract ideas.  They simply implement the ideas with generic computer components.  For example, claim 1 of the '908 patent and claim 1 of the '530 patent recite only a memory device, compression, and a "data accelerator."  The common specification confirms that the memory device and compression techniques are generic, well-known, and conventional.  *See, e.g.*, Appx175 (1:51-53), Appx176 (4:48-54), Appx177 (5:39-40, 5:48-49), Appx180 (11:31-45, 12:3-4, 12:64-67), Appx181 (13:45-58, 14:7-19), Appx182 (16:52-53); *supra* at 8-9.  And, as discussed, Realtime's own construction of "data accelerator" (Realtime Br. 72) confirms it is a mere functional conduit for the abstract idea—which "cannot supply the inventive concept."  *BSG Tech*, 899

F.3d at 1290.  Likewise, claim 1 of the '728 patent recites only a processor, a content dependent compression encoder, and a single data compression encoder.  The '728 patent specification similarly confirms that these are generic, well-known, and conventional components.  *See, e.g.*, Appx334 (3:1-2), Appx335 (6:30-41), Appx336 (7:11-22), Appx337 (9:29-31), Appx338 (12:56-60), Appx340 (16:50-57); *supra* at 12-13.  Thus, Realtime's claims fail to meaningfully limit the claim scope with an inventive concept.  The fact that Realtime indiscriminately sues whole industries—essentially anyone who uses multiple types of conventional data compression—confirms as much.

Notably, and with good reason, this Court has repeatedly—and recently—held that such broad, functional invocations of known data compression techniques add nothing inventive.  *See Adaptive Streaming*, 836 F. App'x at 902 (using "second compression formats" suitable for different devices is non-inventive); *Voit Techs.*, 757 F. App'x at 1003 ("using different compression formats in the claimed network" is non-inventive); *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 615 (Fed. Cir. 2016) ("vague, functional descriptions" of "using known image compression techniques" is non-inventive).  Realtime's claims are equally flawed.  Where, as here, "[t]he only limitations on the breadth of the result-focused, functional claims" are "purely conventional features," those "do not meaningfully limit the scope of the

claims." *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1265 (Fed. Cir. 2016).

Even if some of Realtime's claims recite nominal elements that avoid preempting all uses of compression, that would not save the claims. As discussed, "[w]hile preemption concerns are the basis for the judicial exceptions to patentability, the absence of complete preemption does not demonstrate patent eligibility." *BSG Tech*, 899 F.3d at 1291 (cleaned up). At most, Realtime's claims marginally narrow the abstract ideas with "well-understood and conventional" components and inconsequential limitations, which does not add anything inventive. *Id.* at 1291; *see also, e.g.*, *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 716 (Fed. Cir. 2014) (adding "insignificant" limitations at step two "add[s] nothing of practical significance to the underlying abstract idea"). Realtime's broad and generic claims still risk unduly monopolizing basic tools.

The sweeping breadth with which Realtime asserts its claims confirms that they are directed not to some specific technological advance warranting patent protection under § 101, but seek to "improperly t[ie] up … building blocks of human ingenuity." *Alice*, 573 U.S. at 216 (internal quotation marks and citation omitted). The district court correctly rejected that attempt. Under *Alice* and this Court's law, Realtime's claims are ineligible under § 101.

## CONCLUSION

The district court's judgments should be affirmed.

Dated:  March 18, 2022                    Respectfully submitted,

                                          */s/ Gabriel K. Bell*_____
Amit Makker                               Gabriel K. Bell
LATHAM & WATKINS LLP                      LATHAM & WATKINS LLP
505 Montgomery Street                     555 Eleventh Street, NW
Suite 2000                                Suite 1000
San Francisco, CA 94111                   Washington, DC 20004
(415) 391-0600                            (202) 637-2200
amit.makker@lw.com                        gabriel.bell@lw.com


*Counsel for* Amicus Curiae *Veritas Technologies LLC*

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation of Federal Circuit Rules 29(b) and 32(b) because it contains 4,328 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b)(2).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 with 14-point Times New Roman font.

Dated: March 18, 2022                          */s/ Gabriel K. Bell*
                                               Gabriel K. Bell